UNITED STATES of America, Plaintiff/Respondent,

v.

Christopher Columbus LEWIS, Defendant/Movant.

Nos. 92–40037–01–DES, 96–3012–DES.

United States District Court, D. Kansas.

March 15, 1996.

---

**1516**

Christopher Columbus Lewis, Terminal Island, CA, pro se.

Thomas G. Luedke, Office of United States Attorney, Topeka, KS, for U.S.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on Christopher Columbus Lewis's ("Lewis") motion—filed pursuant to 28 U.S.C. § 2255—to set aside and vacate his convictions. (Doc. 149). On December 2, 1992, a jury found Lewis guilty of five drug-related counts: (1) possession with intent to distribute cocaine; (2) possession with intent to distribute crack cocaine; (3) conspiracy to possess both of those substances with the intent to distribute them, and two counts of using a firearm during drug trafficking.

In his motion, Lewis argues that his convictions for using a firearm during drug trafficking should be vacated in light of the United States Supreme Court's ruling in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). In *Bailey,* the Court clarified the meaning of "use" of a firearm under 18 U.S.C. § 924(c)(1).

Lewis also argues that his rights of due process have been violated because there was no probable cause to stop the car in which he was a passenger, that an illegal search followed the stop, that there was an upward departure from the sentencing guidelines and that possession of a firearm is not sufficient to enhance his sentence.

Finally, Lewis argues that he is the victim of selective prosecution and as such, the rule of lenity applies.

### I. BACKGROUND

On July 20, 1992, Lewis was a passenger in a car driven by Donald K. Davis ("Davis") in Ellsworth County, Kansas, that was stopped by a state trooper for speeding 73 miles per hour in a posted 65 miles per hour speed zone on I–70. While approaching the driver's side of the vehicle, the trooper noticed Lewis reaching for something in the open glove box. As Lewis saw the trooper approach, Lewis quickly removed his hand from the glove box and closed it.

As the trooper asked Lewis and Davis about their destination, the trooper smelled alcohol from inside the car. The trooper asked Lewis if he had been drinking and Lewis told the trooper that he had had a beer. Lewis then handed the trooper an open beer can that had been laying on the back floorboard of the car. Lewis was asked to exit the car so that the trooper could search for additional open containers in the car. The trooper asked both Davis and Lewis if there were any weapons in the car. Davis told the trooper that there was a gun in the glove box. Upon opening the glove box, the trooper found a loaded .25 caliber pistol. The trooper ran a check on the gun to determine if it was stolen and then returned it to the car. Throughout this interaction with the trooper, both Davis and Lewis appeared very nervous.

After issuing a written warning for speeding to Davis, the trooper asked Davis and received consent to search the trunk area of the car. Davis opened the trunk of the car and the trooper found a brown paper sack underneath the carpeting of the right rear wheel well. Inside the sack was a tightly wrapped block which the trooper recognized as being typical of packaging for illegal drugs. Both Davis and Lewis were immediately placed under arrest. The trooper then cut the wrapped block open and a white powder substance—later tested positive as cocaine—was inside.

The car was towed to the sheriff's security garage and the next day an inventory search was conducted of the contents of the car. In the trunk of the car was some luggage and a black gym bag which contained a shoe box with ten baggies of crack cocaine inside. Also found in the trunk was a briefcase—belonging to Lewis—containing a loaded .22 caliber revolver.

## II. DISCUSSION

### A. *BAILEY:* USE OF A WEAPON

On December 6, 1995, the United States Supreme Court issued its decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), in which it clarified the meaning of use of a firearm under 18 U.S.C. § 924(c)(1). (This court recently addressed the *Bailey* "use of a gun" issue in *United States v. Fletcher,* 919 F.Supp. 384 (D.Kan.1996)).

Prior to *Bailey,* the Tenth Circuit held that to establish use of a gun in relation to a drug trafficking crime, the government must show (1) that the defendant had "ready access" to the firearm, and (2) that the firearm was an "integral part" of the criminal undertaking and increased the likelihood that the undertaking would succeed. *United States v. McKinnell,* 888 F.2d 669, 675 (10th Cir.1989).

■ The standard enunciated in *Bailey* narrows the definition of "use" of a firearm. Under *Bailey,* the government must prove "an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Bailey,* —— U.S. at ——, 116 S.Ct. at 505. "Use" connotes "more than mere possession of a firearm by a person who commits a drug offense." *Id.* at ——, 116 S.Ct. at 506. If the offender does not disclose or mention the gun, it is not used; placement for later active use does not in and of itself constitute "use." *Id.* at —— – ——, 116 S.Ct. at 509–10. Active employment includes "reference to a firearm calculated to bring about a change in the circumstances of the predicate offense," as well as brandishing or displaying a gun. *Id.* at ——, 116 S.Ct. at 508. A defendant cannot be charged, however, for merely storing a weapon near drugs or drug proceeds. *Id.*

In *Bailey,* drugs were discovered in the front console of the car and a gun was found in the car trunk. The Supreme Court held that Bailey's possession of the gun in the trunk of his car did not constitute "use" for purposes of a drug trafficking crime under 18 U.S.C. § 924(c)(1). *Id.* at ——, 116 S.Ct. at 509.

In the instant case, Lewis was convicted under 18 U.S.C. § 924(c)(1) due to the gun being found in the trunk of the car in which he was a passenger. Lewis was sentenced to five years for that conviction. Given the decision in *Bailey,* the United States should address why that conviction should not be vacated.

Lewis also received a five year sentence due to the gun found in the glove compartment of the car. The evidence reflects that Lewis handled papers in the glove compartment as the trooper was approaching the car. Whether Lewis's actions and the gun's location in the glove compartment constitute "use" under a *Bailey* analysis should also be addressed by the United States.

### B. RIGHT OF DUE PROCESS

In his motion, Lewis asserts that there was no probable cause to stop the automobile in which he was a passenger and that the resulting search and seizure were unconstitutional because his rights of due process were violated. These claims are improperly asserted and without merit.

■ "Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal." *United States v. Warner,* 23 F.3d 287, 291 (10th Cir.1994) (citation omitted). "Consequently, a defendant may not raise claims that were not presented on direct appeal unless he can show cause and prejudice resulting from the error." *United States v. Cook,* 45 F.3d 388, 392 (10th Cir.1995) (citing Warner). *See United States v. Allen,* 16 F.3d 377, 378 (10th Cir.1994) ("A defendant who fails to present an issue on direct appeal is barred from raising the issue in a § 2255 motion, unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed.").

■ Lewis's claims of being denied his rights of due process are improperly before this court. He should have presented those issues on direct appeal before the Tenth Circuit Court of Appeals. To have this court entertain his due process arguments, Lewis

**1518**

must offer some reason for his "procedural default" in not raising those issues before the court of appeals. *Id.* Since Lewis has failed to do so he cannot expect this court to consider what are essentially issues for direct appeal.

■ Moreover, Lewis offers no evidence demonstrating lack of probable cause to stop the automobile and why the search of the automobile was an illegal search and seizure. In fact, the record clearly demonstrates that Davis—the driver of the car Lewis was riding in—was stopped for speeding. Hence, there was probable cause to stop the car. Also, the trooper obtained permission from Davis to search the trunk of the car where drugs were found.

■ After Lewis and Davis were arrested and taken into custody, a proper inventory search of the car was conducted. "[T]he routine practice by police of securing and inventorying the contents of an automobile [do] not constitute an unreasonable search under the fourth amendment." *U.S. v. Kornegay,* 885 F.2d 713, 717 (10th Cir.1989). "[S]uch standard procedures ... serve the strong governmental interests in protecting the property while it [is] in police custody; in protecting the police from claims about lost or stolen property; and in protecting the police from potential danger." *Id.*

Applying *Kornegay* and a long line of cases affirming inventory searches to Lewis, it is clear that Lewis's constitutional rights to be free from unreasonable search and seizure were not offended.

## C. UPWARD DEPARTURE AND SENTENCE ENHANCEMENT

Lewis's convictions on counts one, two and three run concurrently. Under the United States Sentencing Guidelines, his first conviction—possession with intent to distribute approximately 982 grams of cocaine—is a level 34 offense (with a criminal history category of III). As such, Lewis received the maximum sentence possible of 235 months.

His convictions on counts two and three are also level 34 offenses (with a criminal history category of III). However, Lewis was assessed a two-point enhancement for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1). That made Lewis eligible for sentences of between 235 and 293 months on both of those counts. Also, because Lewis had a prior drug conviction, under U.S.C. 21 § 841(b)(1)(A), the *statutory* minimum for his convictions on counts two and three is 240 months each.

Providing no basis for his argument, Lewis now asserts that possession of a firearm is not sufficient to enhance his sentences under counts two and three. He also contends that an upward departure from the sentencing guideline is unconstitutional.

Under the Commentary to U.S.S.G. § 2D1.1(b)(1) (application note 3):

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

■ Lewis is plainly mistaken in asserting that possession of a firearm is not sufficient to enhance his sentence. The sentencing guidelines explicitly provide for such enhancement. Two handguns were found in the car in which Lewis was traveling, one of which was found in the trunk of the car where the drugs were also discovered. Hence, it is more than probable that those guns were connected with Lewis's offense.

Furthermore, Lewis is wrong in asserting that his sentences for his convictions on counts two and three constitute an upward departure. Under the sentencing guidelines, Lewis's maximum sentence for those two offenses is 293 months (due to the enhancement resulting from possession of guns). However, because Lewis had a prior drug conviction, under U.S.C. 21 § 841(b)(1)(A) his minimum sentence is 240 months. The sentencing guidelines provide that the court may impose a sentence at any point within the guideline range, i.e., 240 to 293 months in this instance. U.S.S.G. § 5G1.1(c). Hence, there was no upward departure because the

court strictly adhered to the guidelines by imposing the statutorily required minimum sentence, even though Lewis could have received a greater sentence (of up to 293 months).

### D. SELECTIVE PROSECUTION AND LENITY

Lewis claims he is the victim of selective prosecution and he now requests that this court order the U.S. Attorney's office to provide him office guidelines for the prosecution of federal cocaine base cases.

The court need not consider the merits of Lewis's selective prosecution claim because under Fed.R.Crim.P. 12(b)(1), Lewis must raise objections based on defects in the institution of the prosecution prior to trial. Selective prosecution is subject to that requirement. *See U.S. v. Bryant,* 5 F.3d 474, 476 (10th Cir.1993) (wherein defendant's case originated in state court and was assigned to federal court; defendant failed to timely raise his objection to selective prosecution and his appeal on that ground was denied).

Fed.R.Crim.P. 12(b)(1) presumes that a selective prosecution claim is waived if not raised at trial. *See Bryant,* 5 F.3d at 476. However, the rule provides that the court for cause shown may grant relief from the waiver. In this instance, Lewis has not shown any cause as to why his objection based on selective prosecution was not timely raised. Therefore, his request for the U.S. Attorney's office guidelines pertaining to cocaine prosecutions is denied and his claim of selective prosecution is deemed waived.

**IT IS THEREFORE BY THE COURT ORDERED** that the U.S. Attorney shall respond by **March 26, 1996,** after receiving service of this order showing cause as to why movant's request to have his two convictions for using a firearm during drug trafficking in violation of 18 U.S.C. § 924(c) should not be vacated.

**IT IS FURTHER ORDERED** that Lewis's motion to vacate and set aside his convictions on counts two and three of the indictment (Doc. 149) is denied. Also, Lewis's motion to vacate and set aside his convictions due to selective prosecution (Doc. 149) is denied.